SIG, Inc. d/b/a Visonic Systems, a Florida
corporation, and SECURE2WARE, INC., a Florida
corporation, on behalf of themselves and all others
similarly situated,

                              Plaintiffs,

vs.                                                  Case No. 0:12-cv-62080-RSR

AT&T DIGITAL LIFE, INC., a New York
corporation, f/k/a XANBOO, INC., AT&T, INC., a
New York corporation, AT&T TELEHOLDINGS,
INC., a Delaware corporation; ROBERT
DIAMOND, an individual, WILLIAM DIAMOND,
an individual, JAMES DIAMOND, an individual,
BABAK REZVANI, an individual, and MEHRDAD
GHALEBI, an Individual,

                              Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS AT&T DIGITAL LIFE, INC. AND AT&T TELEHOLDINGS, INC.'S MOTION TO DISMISS

SIG, Inc., d/b/a Visonic Systems, a Florida corporation, and SECURE2WARE, INC., a

Florida corporation, on behalf of themselves and all others similarly situated (collectively

"Plaintiffs"), oppose Defendants AT&T Digital Life, Inc. and AT&T Teleholdings, Inc.

(collectively "Defendants") Motion to Dismiss Plaintiffs' Complaint ("Def. Mot.").

### INTRODUCTION AND ARGUMENT SUMMARY

#### I. DEFENDANTS MAKE NO SHOWING THAT PLAINTIFFS EVER RECEIVED, READ OR SIGNED SUPPOSEDLY CONTROLLING "AGREEMENT"

Defendants' argument for dismissal of Plaintiffs' claims for breach of contract, implied

covenant of good faith and fair dealing, implied contract in fact and law, unjust enrichment and

promissory estoppel, statutory claims for non-disclosure under Florida's Sale of Business

Opportunities Act ("FSBOA"), Florida Franchise Act ("FFA") and Deceptive and Unfair Trade

Practices Act ("FDUTPA") all turn on Defendants' unsupported and conclusory *factual*

assertions that Plaintiffs executed an Online Dealer Agreement (the "Agreement"). Defendants

say that supposed Agreement governed the relationship between Plaintiffs and AT&T (Def. Mot. at 1) and permitted the Defendants' legal wrongs against Plaintiffs.[1] *See* Def. Mot. at 2.

The Court must take all factual allegations in the Complaint as true and construe all reasonable inferences "in the light most favorable to Plaintiff." *See, e.g., Pinellas Fed. Cred. Union v. Reynolds*, 2012 WL 1069814, * 1 (M.D. Fla., Mar. 29, 2012). Plaintiffs allege they "never even received" the "Agreement" to which the March 3, 2011 letter purporting to terminate Plaintiffs' dealerships referred. *See* Compl. ¶ 93. *See also* Compl. ¶¶ 171(c). Defendants did not provide Plaintiffs with a written contract as the FSBOA, § 559.809(11), requires. *See also* Compl. ¶ 171(e).

Neither Defendant's brief, the Agreement, or Stuart Tomlinson's Declaration ("Tomlinson Dec.") make any *showing* that the Plaintiffs ever received, saw, read, understood and executed the Agreement. Paragraph 4 of Tomlinson's Dec. makes the unsupported and conclusory assertion that Plaintiffs "entered into" the Agreement by "clicking through" Defendant Xanboo, Inc.'s website. Tomlinson's Dec. supplies no dates, times, search requests, data logs or other facts showing the Plaintiffs accessed the referenced site, or saw, read and knowingly agreed to terms binding themselves to any Agreement. Plaintiffs' Complaint directly says otherwise. *See, e.g.*, Compl. ¶¶ 93, 171(c), (e).

---

[1] Defendants properly do not claim the Complaint is insufficiently specific, or otherwise fails to provide fair notice of Plaintiffs' claims or their grounds. Defendants' dismissal arguments reflect Defendants' matching up of Plaintiffs' claims with specific provisions in the Agreement Defendants say controls. That exercise demonstrates Defendants understand Plaintiffs' claim and their bases. Defendants' Agreement-based argument essentially *is* Defendants' dismissal argument. Accordingly, Plaintiffs in this Introduction and Argument Summary make a number of arguments applicable to all of Defendants' Agreement-based arguments. Defendants set the dismissal test using many cases applying the pre-*Twombly* formulation of *Conley v. Gibson*, 355 *U.S.* 41, 45-46 (1957). *See* Def. Mot. at 3 (citing *Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 208 *F. 3d* 1308, 1310 (11th Cir. 2000); *Hishon v. King & Spalding*, 467 *U.S.* 69, 73 (1984); *Powell v. U.S.*, 945 *F. 2d* 374, 375 (11th Cir. 1991); *Peterson v. Atlanta Housing Auth.*, 998 *F. 2d* 904, 912 (11th Cir. 1993)). Reflecting the long-established Rule 8(a)(2) test of "fair notice of the claim and its grounds," those cases all support denial of the Defendants' dismissal motion. *See also Brooks v. BC, BS of Florida, Inc.*, 116 *F. 3d* 1354, 1369 (11th Cir. 1997) (Def. Mot. at 3), applying *Conley*, noting a "dismissal motion is viewed with disfavor and rarely granted," and saying "[t]he pleadings must show, in short, that the Plaintiffs have no claim before the 12(B)(6) motion may be granted."

Defendants merely *say* without *showing* that the Complaint's factual allegations should not receive the presumption of truth to which decades of decisions interpreting Rule 12(b)(6) entitle factual allegations.  If a plaintiff's conclusory, unsupported assertions fail to state a claim, *see, e.g.*, *Bell v. J.B. Hunt Transp., Inc.*, 427 Fed. App'x. 705, 707 (11th Cir. 2011) (per curiam), Defendants' conclusory, unsupported assertions fail to rebut Plaintiffs' factual allegations that they never entered any Agreement.  At most, Defendants' unsupported assertions generate factual issues unsuited for resolution on a dismissal motion and requiring discovery.  *See Pinellas Fed. Cred. Union v. Reynolds*, 2012 WL 1069814, *2 (M.D. Fla., Mar. 29, 2012) (even though "common sense suggests that a President and CEO of a credit union would be an 'exempt' employee for purposes of the FLSA, this issue is highly factual and cannot be determined at this [motion to dismiss] stage").  *See also Mayor's Jewelers, Inc. v. Meyrowitz*, 2012 WL 2344609, *2 (S.D. Fla. June 20, 2012) (factual issues whether Defendants had actual notice of litigation and opportunity to participate in settlement discussions "is a factual issue which may not be resolved on a motion to dismiss"); *Richard E. Basha, P.A. v. Dorelein*, 930 *So. 2d* 304, 307  (Fla. App. 4th Dist. 2006) (disputed contract formation issues presented factual questions not determinable on summary judgment).

Defendants ignore Plaintiffs' necessarily-presumed-true factual allegations that they never received any supposed "Agreement," just as Defendants ignore Federal Rule of Civil Procedure 12(d).  For the Court to consider the supposed controlling Agreement, which the Complaint does not attach, reference, or otherwise incorporate, Defendants' Rule 12(b)(6) dismissal motion "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Plaintiffs "must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Ibid.*

Defendants claim, and the Plaintiffs' Complaint denies, that the Agreement exists and that Plaintiffs executed it. This factual dispute alone warrants discovery. *See, e.g., Gordon v. Chase Home Finance, LLC*, 2013 WL 256743, *3, n. 2 (M.D. Fla. Jan. 23, 2013) ("When a document outside the pleadings is considered, Federal Rule of Civil Procedure 12(c) requires that 'the motion be treated as a motion for summary judgment, and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent by such a motion.'" (quoting Fed. R. Civ. P. 12(c)). *See also* Fed. R. Civ. P. 56(d)(2) and 56(e)(1).

## II. PLAINTIFFS' COMPLAINT NEITHER INCLUDES, REFERENCES, INCORPORATES, OR IS BASED ON THE AGREEMENT

Defendants inappositely cite to *Brooks v. Blue Cross Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997), and *Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561, 571 (E.D.N.Y. 2008). (Def. Mot. at 3). Those cases turned on a fact, the existence of a binding valid Comlaint, that Plaintiffs' Complaint negates. Not only does the Complaint not "refer" to the Agreement (*Brooks, supra*, 116 F. 3d at 1369), the Complaint expressly alleges Plaintiffs neither received nor executed any Agreement. *See* Compl. ¶¶ 93, 171(c), (e). *See also* Compl. ¶ 114 (no required written disclosures required); ¶ 116 (no provision of FTC Disclosure Statement or its required information); ¶ 118 (no provision of Uniform Franchise Offering Circular ("UFOC") or its required information). Contradictions between the purported "Agreement" and the Complaint gain Defendants nothing. *See Fowlkes, supra*, 584 F. Supp. 2d at 571. Plaintiffs factually allege they ever received, read, understood, and knowingly manifested assent to any such Agreement.

Defendants provide the Court no rationale for taking judicial notice (*see* Fed. R. Evid. 201), of the hearsay Agreement on which Defendants' dismissal arguments (Counts I-IX) almost exclusively rest. Central to Plaintiffs' claims is not the "Agreement," but, rather, the *absence of* the Agreement or any analogous undertaking. The Court should disregard that purported

Agreement. *See, e.g., Mayor's Jewelers, Inc. v. Meyrowitz,* 2012 WL 2344609, *2 (S.D. Fla. June 20, 2012) (denying judicial notice of state court documents where "Plaintiff disputes both that the state court documents are central to its claims and the veracity of the state court documents"; court ruling on dismissal motion generally may consider extrinsic document "if it is (1) central to the plaintiff's claim; and (2) its authenticity is not challenged" (quoting *SFM Holdings, Ltd. V. Banc of Am. Sec., LLC,* 600 *F. 3d* 1334, 1337 (11th Cir. 2010)); *6 (denying dismissal motion where dismissal arguments were "premised entirely" on documents not judicially noticeable). *Cf. Merl v. Warner Bros. Ent'mt.,* 2013 WL 266049, *3 (S.D. Fl. Jan. 23, 2013) (taking judicial notice of movie packages central to, and inaccurately characterized in, plaintiffs' complaint).

Even if Defendants supplied, and the Court accepted, a rationale for consideration of the Agreement, the Court could only judicially notice the Agreement's existence, not the crucial facts whether the Plaintiffs received, read, understood, and knowingly manifested assent to the Agreement and not whether the Agreement's provisions are true. *See Meyrowitz, supra,* 2012 WL 2344609, *2 (court could only judicially notice fact that allegations were made in state court proceeding, not "the accuracy" of those allegations).

## III. EVEN WERE THE AGREEMENT PROPERLY AUTHENTICATED AND BEFORE THE COURT, IT DOES NOT TRUMP DEFENDANTS' DISCLOSURE OBLIGATIONS UNDER FTC RULES AND STATE STATUTES

Defendants' unsupported hypothesis that Plaintiffs received and executed the purportedly dismissal-compelling Agreement is as legally unavailing as it is factually unsupported. Defendants ignore the fundamentally protective common aim of the FSBOA, FFA and FDUTPA to *prevent* Defendants from doing what the Complaint alleges Defendants did here: abusing dealers by invoking the supposed terms of one-sided, adhesive agreements. *See, e.g. Eclipse*

*Medical, Inc. v. American Hydro-Surgical Instruments, Inc.*, 262 *F. Supp. 2d* 1334, 1357 (S.D. Fla. 1999) (FSBOA and FDUTPA are consumer protection statutes) .

The Agreement fails to make myriad of the required disclosures described in Plaintiffs' Complaint. *See, e.g.*, Compl. ¶¶ 112-118. Defendants' argument asks the Court to accept that Defendants were entitled to contract themselves out of the required disclosures and other protections the FSBOA, FFA and FDUTPA mandate. Were that so, those statutes would be meaningless, violating long-established statutory interpretation canons.

## IV. WHETHER THE AGREEMENT IS "CLICK-THROUGH" OR "BROWSEWRAP" IS AN IMPORTANT FACTUAL QUESTION NOT PROPER FOR DETERMINATION ON A DISMISSAL MOTION

Defendants assert the Agreement is a "click through Agreement." Def. Mot. at 4, 4 n.1. But Defendants offer nothing to show the Agreement is in fact a "click through" Agreement. Such an agreement would require Plaintiffs to "manifest assent to the terms and condition by clicking on an 'I agree' box," as distinguished from a "browsewrap" Agreement, which "does not require this type of express manifestation of assent" but under which "a party instead gives his or her assent by simply using the product – such as by entering the website or downloading software." *Kwan v. Clearwire Corp.*, 2012 WL 32380, *7 (W.D. Wash. Jan. 3, 2012). Although calling the Agreement a "click-through" agreement, the Tomlinson Declaration describes it in "browsewrap" terms. *See* Tomlinson Dec. ¶ 4 ("Both SIG and Secure2Ware entered into the Online Dealer Agreement . . . by 'clicking through' Xanboo, Inc.'s website which allowed businesses to sign up to become dealers online.").

The "click-through" versus "browsewrap" distinction is important and intensely factual. "The law regarding manifestation of agreement to browsewrap agreements is less clear [than that regarding click-through agreements] . . . . The determinative issue is whether the website user

had actual or constructive knowledge of the terms and conditions prior to using the website." *Traton News, LLC v. Traton Corp.*, 2012 WL 3822161, *9 n.10 (S.D. Ohio Aug. 28, 2012).

The requisite substantial factual showing of informed user assent for a browsewrap agreement is found nowhere in the Complaint or Tomlinson Declaration. Defendants do not show Plaintiffs had "reasonable notice of the terms" sufficient to support implied consent to such agreement. *See Kwan, supra*, 2012 WL 32380, *7 ("In the seminal decision of *Specht v. Netscape Comms. Corp.*, [306 *F. 3d* 17, 20, 31 (2d Cir. 2002),] the Second Circuit held that internet users did not have reasonable notice of the terms in an online browsewrap agreement and therefore did not assent to the agreement under the facts presented to the court.") .

Defendants show no facts demonstrating Plaintiffs had knowledge of and consented to the terms and conditions on which Defendants now rely. Defendants fail to show that the Xanboo website prominently and unambiguously told Plaintiffs that use of the Xanboo website subjected Plaintiffs to the supposed Agreement. *Cf. Snap-On Bus. Solutions, Inc. v. O'Neil & Assoc., Inc.*, 708 *F. Supp. 2d* 669 (N.D. Ohio 2010) (sufficient evidence permitting jury to conclude defendant had actual or constructive knowledge of plaintiff's license, where plaintiff described how the process worked and warnings that use equates to submission to terms and conditions). Defendants do not show: (1) notice of terms; (2) opportunity to review terms; (3) whether, and if so, how Plaintiffs were informed that doing a specified action would signal contract formation; (4) a visible "I agree" or "I consent" click box; (5) screen shots showing consent language; (6) the location of contract formation language, whether conspicuous, buried, or requiring clicking on further hyperlinks; (7) contract formation language; (8) any other indicia of contract formation; (9) discussion or disclosure of hyperlinks or incorporation of any contract by reference; (10) language advising before "click through" that "clicking through"

Xanboo website would result in contract formation; or (11) that such agreement would not be blocked by software or browser tool.

As then-Judge Sotomayor noted in *Specht, supra*, 306 *F. 3d* at 22 n.4, "some courts" have upheld contract formation by click-through agreements, but not all. Showing meaningful assent is a prerequisite:

> [R]eference to the existence of license terms on a submerged screen is *not sufficient* to place consumers on inquiry or constructive notice of those terms. The SmartDownload webpage screen was printed in such a manner that it tended to conceal the fact it was an express acceptance of [Netscape's] rules and regulations. *Id.* at 32 (emphasis added).

Defendants have failed to show sufficient facts to permit this analysis.

## V. UNAUTHENTICATED "AGREEMENT" IS IMPROPERLY BEFORE COURT

Defendants fail to describe the development, drafting or other provenance of the Agreement or the dates, times and locations of the Agreement's supposed appearance on Xanboo's website. Defendants provide no screenshots or other representations making such showings. They offer no statements showing or even permitting a reasonable inference that Xanboo's website informed Plaintiffs that "clicking through" – whether by clicking an "I agree" or "I consent" box, or simply clicking through to another page – was consent to the Agreement.

Defendants do not say Plaintiffs saw the Agreement before giving their supposed assent. Defendants do not indicate the number of pages preceding and following the supposed box on which the click would be made, which influences the "prominence" of warning inquiry.

Defendants nowhere show any advisories to users  Defendants fail to produce anything corroborating the naked say-so of the Tomlinson Dec. even to authenticate the "Agreement" by "produc[ing] evidence to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(b).

"Testimony of a witness with knowledge" can, but does not automatically, suffice for authentication. *See* Fed. R. Evid. 901(b)(1). Nothing in the Tomlinson Dec. foundationally demonstrates how Tomlinson's Xanboo responsibilities provided him with personal knowledge of the Agreement. The Agreement purports to be a legal undertaking, typically within the bailiwick of in-house attorneys or managers than IT personnel such as Tomlinson.

Beyond that threshold authentication problem, the Tomlinson Dec. nowhere contains a single fact showing Plaintiffs *received* or *executed* the Agreement, by "clicking through" or otherwise. Presumably an IT employee, such as Tomlinson purports to be, claiming braod "responsibilities" for "system administration" and the like  (Tomlinson Dec. ¶ 2) could cite facts to show Plaintiffs actually got, and clicked through, the Agreement. Unsupported factually, the Tomlinson Dec.'s statement that the "Agreement" "was the controlling agreement" between Plaintiffs and Xanboo is a legal conclusion beyond Tomlinson's asserted competence. Tomlinson's assertion that Plaintiffs "entered into" the Agreement also lacks any factual support.

## RELEVANT FACTS

Chock full of repeated references to the purported "Agreement," underscoring that purported Agreement's centrality to their dismissal argument, Defendants' "Statement of Facts" (Def. Mot. 2-5) nowhere shows Plaintiffs actually received, read, and executed the "Agreement." Defendants claim "Plaintiffs became dealers of Xanboo by completing a 'click-through' agreement whereby Plaintiffs accepted the terms of the Agreement." Def. Mot. at 4. Defendants cite for this proposition the Agreement, Exhibit A of Tomlinson's Dec. Def. Mot. at 4.

However, the "Online Dealer Agreement" contains no indicia that either Plaintiff ever received, let alone assented to, the "Agreement." Defendants attach nothing showing, or even suggesting, that Plaintiffs "entered into the Online Dealer Agreement . . . by 'clicking through'

Xanboo, Inc.'s website which allowed businesses to sign up to become dealers online."
Tomlinson Dec. ¶ 4. Nowhere does the Tomlinson Dec. say, let alone show, how that process
worked. Nor, among other things, does the Tomlinson Dec. say, let alone show: whether users
followed the purported click-through process in every case; how that process worked; whether it
alerted users that they were submitting to the Agreement or any other terms and conditions
Defendants imposed; whether invalid clicks could be and were distinguished from valid clicks;
whether Defendants kept any records of dealers who had actually clicked-through to accept the
Agreement; whether, on or about a certain specific date, either of the Plaintiffs clicked-through
and accepted the Agreement; what, generally, the "Effective Date" of the Agreement was; and
how, as to Plaintiffs specifically, the Agreement defines "Effective Date," which it treats as a
defined term but nowhere defines.

Defendants do not address whether any additional documents, terms or conditions
became, initially or subsequently, part of the Agreement. For example, Sec. 8.4 says "[e]ach
party's performance under this Agreement, [sic] will comply with all applicable United States
federal, state and local laws and ordinances, and all orders, roles [sic], regulations and
requirements thereunder." This provision generates the factual question whether, contrary to the
Complaint, Defendants provided required information to Plaintiffs and others whom the
Agreement calls "dealers." Defendants say nothing about whether dealers could obtain products
and other inventory and act as Xanboo-authorized dealers for sales and service without actually
clicking-through the Agreement. Defendants ignore whether the Agreement and its supposed
click-through requirement were sufficiently clear, noticeable and unambiguous to satisfy
requirements for click-through agreement enforceability. Defendants do not say whether all,
many, or few dealers actually clicked-through and supposedly executed the Agreement.

Defendants' argument boils down to a request that the Court accept the unsupported, conclusory assertion that both Plaintiffs assented to the Agreement.  That request contradicts the well-pleaded, highly specific and controlling factual allegations in the Complaint.  *See, e.g.,* Compl. ¶¶ 93, 171(c), (e).  Corroborating those allegations,  Paragraph 3 of the Tomlinson Dec. says that just ordering merchandise with no accompanying agreement triggered dealership status:

> On or about May 24, 2010, May 26, 2010, July 8, 2010, and July 14, 2010, ViSonic received from [Xanboo's] Terry Gurley an email document describing a "Xanboo Dealership Special Offer" attaching a "Xanboo Dealer Starter Order" and "Dealer Premium Program Sample."   Among other things, Terry Gurley's emails all stated: "You will become a Xanboo Dealer if you order your **Enhanced Security Starter Kit WiFi Upgrade for $299.00 <u>within two business days</u>....**  Once you place an order, **you will be an authorized Xanboo Dealer**  and you will receive an email with credentials that will allow you access to the Xanboo Dealer Portal.  (Emphases in original.)

## ARGUMENT AND AUTHORITIES

## I.  COURT SHOULD NOT JUDICIALLY NOTICE PURPORTED AGREEMENT

"[A] district court may not consider materials outside of the complaint without converting a motion to dismiss into one for summary judgment and giving the parties ten days' notice pursuant to Federal Rule of Civil Procedure 56(c).  A district court may, however, consider a document attached to the motion to dismiss without converting the motion if the attached document is central to the plaintiff's claim and the plaintiff does not dispute the authenticity of the document."  *Williams v. Jefferson County, Ala.*, 482 *Fed.Appx.* 480, 482 (11th Cir. 2012) (citing *SFM Holdings, Ltd. v. Banc of America Securities, LLC,* 600 *F.3d* 1334, 1337 (11th Cir. 2010)).  "In this context, 'undisputed' means that the authenticity of the document is not challenged."  *Day v. Taylor*, 400 *F.3d* 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 *F.3d* 1125, 1134 (11th Cir. 2002)).

In *Horsley*, 304 F.3d at 1134, the plaintiff brought defamation actions against the defendants for comments during a CNN broadcast. The defendants attached excerpts of the broadcast transcript to their answers and filed a motion for judgment on the pleadings. *Ibid.* ("Given that the operative rule language is identical and that the provisions serve the same purpose, we believe that the Rule 12(b)(6) incorporation by reference doctrine should apply in Rule 12(c) cases as well."). The plaintiff argued that "neither one is the transcript referred to in his complaint," and that "the attached transcripts contain only excerpts of Ms. Feldt's actual statements." *Ibid.* The plaintiff said the excerpts did "not contain the statements the complaint insists that Feldt made." *Ibid.* Agreeing with the plaintiff, the Court held that "[b]ecause the authenticity of the transcripts attached to the amended answer is disputed, and because they are not complete transcripts of all of Ms. Feldt's statements in the broadcast, they may not be considered in deciding the Rule 12(c) motion for judgment on the pleadings." *Ibid.*

Like the *Horsley* plaintiff, Plaintiffs here dispute the authenticity of the purported agreement. *See* Compl. ¶ 93. Tomlinson Declaration fails to identify a date either Plaintiff supposedly entered into the Agreement. Nor does it show the "electronic signature" of either Plaintiff or describe any other action sufficing to show assent. At most, the Declaration shows a general dealership agreement without facts showing Plaintiffs received or knowingly entered it.

The Complaint alleges Defendants made numerous representations to Plaintiffs, both oral and implied, not included in the purported Agreement. *See* Compl. ¶¶ 36-37, 39, 41-43, 73, 79-83, 87, and 90. Plaintiffs dispute the existence, authenticity and any binding effect of the Agreement, which is also incomplete, omitting many of Defendants' representations on which Plaintiffs relied. The Agreement should have no place in the Court's ruling on this motion. *See*

*Horsley, supra,* 304 *F.3d* at 1134 (improper for court to consider disputed or incomplete documents on Rule 12(b)(6) motion).

## II. PLAINTIFFS PROPERLY ALLEGE BREACH OF CONTRACT (COUNT I)

Defendants' argument for dismissing Count I, breach of contract, depends entirely on the existence of the "Agreement" and its purported terms. *See* Def. Mot. 5-6. Defendants offer no basis for dismissing Count I but for the Agreement Plaintiffs allege they did not receive and did not execute. *See* Compl. ¶¶ 93-94. At best for Defendants, the Agreement's existence and enforceability, and whether Defendants' own compliance, are fact issues improper for resolution on a Rule 12(b)(6) dismissal motion. Defendants' footnote argument (Def. Mot. at 6, n. 4) for application of New York law also depends exclusively on the existence, and applicability, of the disputed Agreement.

For purposes of this motion, the choice of law provision in the Agreement is not applicable because the Agreement is extraneous to the Complaint, not judicially noticeable, and of disputed authenticity and effect. Florida law should apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 *U.S.* 487, 496 (1941) ("The conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts. Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side.").

## III. PLAINTIFFS PROPERLY ALLEGE CLAIMS FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II), IMPLIED CONTRACT IN FACT (COUNT III), IMPLIED CONTRACT IN LAW/UNJUST ENRICHMENT (COUNT IV) AND PROMISSORY ESTOPPEL (COUNT V)

Defendants' dismissal arguments against Plaintiffs' claims for breach of the duty of good faith and fair dealing, breach of contract implied in law, breach of contract implied in fact/unjust enrichment, and promissory estoppel also turn solely on the terms of the disputed Agreement.

Plaintiffs' well-pleaded complaint specifically and factually alleges that they did not receive and did not sign the Agreement. Those allegations must be accepted as true on this 12(b)(6) motion. *See, e.g., Erickson v. Pardus*, 551 *U.S.* 89, 94 (2007). Defendants' arguments, here, too, do not warrant dismissal and, at most, demonstrate discovery's necessity.

Defendants' arguments to dismiss Plaintiffs' claim for breach of the duty of good faith and fair dealing improperly harness the undisputed legal principle that claims based on that duty cannot contradict a contract's express terms to the disputed factual claim that the Agreement exists and controls in *this* case. *See* Def. Mot. at 7 (citing *Sutton Assoc. v. Lexis-Nexis*, 761 *N.Y.S. 2d* 800, 804 (N.Y. Sup. Ct. 2003); *Cohen v. Nassau Educators Fed. Cred. Union*, 819 *N.Y.S. 2d* 209 (N.Y. Sup. Ct. 2006)). "No Agreement" means no contract exists for implied duty of good faith and fair dealing to contradict or exceed. Those claims survive.

*Scheck v. Burger King Corp.*, 798 *F. Supp.* 692 (S.D. Fla. 1992), a summary judgment case, emphasizes the broad applicability of the implied contractual duty of good faith and fair dealing. First, the court described the rule's deep reach in Florida contract and franchise law ((*id.* at 693-94 (citing cases)), precluding behavior that destroys one party's right to contractual benefits. *Ibid.* Second, the court expressly recognized the duty's existence as a limiting principle to contractually specified rights and duties and as a contractual gap-filler, even where, for example, a written franchise agreement exists. *Id.* at 694 n. 5 (citing 62B *AmJur* 2d, *Private Franchise Contracts*, § 348 (1990) (omitting footnotes)). Third, noting defendant franchisor's lawyer's agreement that the duty applies even where a written franchise agreement exists, the court found the plaintiff was entitled to put to a jury the question whether that duty prohibited defendant franchisor from establishing a competing franchise near plaintiff's. Specifying that the franchisee did not receive any exclusive territorial rights, the franchise agreement did not,

however, specifically say the franchisor reserved the right to locate such competing franchises anywhere franchisor chose. *Id.* at 695-96. Refusing to read the franchise agreement as implying such a reserved right to the franchisor by virtue of the express exclusion of territorial exclusivity to the franchisee, *Scheck* illustrates the protective scope of the good faith and fair dealing duty even if Defendants had shown Plaintiffs received and knowingly entered the Agreement.

Defendants' merger clause argument fails, too. With existence, execution and validity of the Agreement factually disputes, the merger clause is insufficient for dismissal of the implied contract in law and implied contract in fact/unjust enrichment claims. Defendants' cited cases (Def. Mot. at 7-8) advance Defendants' arguments not a whit. Their holdings, that implied contracts are precluded by express contracts by which parties intended to be bound, do not apply where, as here, no express contract is pleaded or shown to exist.

Illustrating Defendants' error here, *DG&A Mg't. Serv. LLC v. Sec. Indus. Ass'n. Compliance and Legal Div.*, 859 *N.Y.S.* 305, 306 (Sup. Ct. App. Div.), states that implied-in-fact contracts require "an indication of a meeting of the minds constituting an agreement." The Complaint contains many such indications. *See, e.g.,* Compl. ¶¶ 37, 39, 41, 74-77). *DG&A* teaches that implied-in-fact contracts are inapplicable "where it appears that [the parties] intended to be bound only by a formal written agreement." The complaint shows no such intent. Tomlinson's Dec. contains only a conclusory unilateral statement that Plaintiffs entered the Agreement, without showing they intended to be bound only by a formal writing.

Contrary to Defendants' claim (Def. Mot. at 8), Plaintiffs did "allege[] that AT&T was enriched at Plaintiffs' expense." *See* Compl. ¶¶ 148, 204(g). That enrichment stands to reason. Plaintiffs invested time, money (*see, e.g.,* Compl. ¶ 130 ("Investment Expenses and Losses")), and effort (*see, e.g.,* Compl. ¶¶ 58-73 (Gerhard Group work)) in learning about, marketing,

selling, installing and servicing products and building a brand the AT&T Defendants later

unilaterally arrogated to themselves without compensation to Plaintiffs. *See* Compl. ¶¶ 78-91.

Defendants' cite to *Mandarin Trading LTD v. Wildenstein*, 919 *N.Y.S. 2d* 465 (NY 2011),

which shows why Plaintiffs' unjust enrichment claim survives.  Emphasizing unjust

enrichment's key triggers of "equity and good conscience," the *Mandarin* court's analysis shows

that permitting Defendants to keep Plaintiff's "payments to Xanboo for goods and services"

(Compl. ¶ 145), and to retain the benefit of "increased product penetration and brand awareness"

(*see* Compl. ¶ 147), without compensating Plaintiffs would be unjust.

## IV. PLAINTIFFS PROPERLY ALLEGE STATUTORY CLAIMS (COUNT  VI, FFA) (COUNT VII, FSBOA) (COUNT VIII, FDUPTA)

Defendants' argue for dismissal of Plaintiffs' statutory FFA, FSBOA and FDUTPA

claims on the grounds that the Agreement controls and requires application of New York, not

Florida, law. *See* Def. Mot. at 9-10.  Whether Plaintiffs ever saw and signed the Agreement is

disputed and unsuitable for resolution on this motion. *See, e.g. In re Checking Account*

*Overdraft Litigation,* 694 *F.Supp.2d* 1302, 1317 (S.D. Fla. 2010) ("Factual issues must not be

resolved on Motion to Dismiss by the simple expedient of selecting facts asserted by one side

over the other as true.").  Contract formation "depends not on the agreement of two minds in one

intention, but on the agreement of two sets of external signs – not on the parties having meant the

same thing but on their having said the same thing." *Blackhawk Heating & Plumbing Co., Inc. v.*

*Data Lease Fin. Corp.*, 302 *So.2d* 404, 407 (Fla.1974) (quoting *Gendzier v. Bielecki*, 97 *So.2d*

604, 608 (Fla.1957)).  Defendants supply no facts showing Plaintiffs received the Agreement

and, somehow, volitionally and knowingly, manifested assent in a legally binding way.

Even if Defendants showed the Agreement existed, and that Plaintiffs received and

executed it, Defendants have not shown they complied with important FTC and state analogue

disclosure requirements.   Like many states' laws, New York's Franchise Sales Act, N.Y. Gen. Bus. Law § 687, forbids any contract purporting to relieve franchisor or dealership sponsors of obligations which recognize the enormous disparity of franchisor-franchisee bargaining power. Similarly, Defendants' supposedly controlling Agreement does not disclaim or otherwise contract around the statutory disclosure requirements that Plaintiffs allege Defendants ignored. Rather, the Agreement imports those disclosure requirements, saying Defendants' "performance under this Agreement, will comply with all applicable United States federal, state and local laws and ordinances, and all orders, roles, regulations and requirements thereunder."  Agreement ¶ 8.4.  Plaintiffs' complaint shows that Defendants' performance did not comply with those legal requirements under the FTC Rule, the FSBOA, FFA and FDUTPA.

Defendants cite to *Motmanco, Inc. v. McDonald's Corp.*, 2005 WL 1027261 (M.S. Fla. Mar. 30, 2005).  Limning the broad remedial reach of FDUTPA, which is "'designed to protect not only the rights of litigants but also the rights of the consuming public at large'" (*id.* at *9 (citing cases) (quoting *Davis v. Powertel, Inc.*, *776 So 2d* 971, 975 (Fla. 1st DCA 2000)), the *Motmanco* court said, "Florida courts have consistently permitted FDUTPA claims to proceed in the face of contract provisions to the contrary or pleading inadequacies." Even if the Agreement existed and were binding, Plaintiffs' FDUTPA claim survives.

Plaintiffs' Complaint alleges numerous well-pleaded facts showing, not just saying, that Defendants treated Plaintiffs as Defendants' dealers. *See, e.g.* Compl. ¶¶ 74-77. Defendants provide nothing gainsaying those well-pleaded facts. No private contract can be used to wreak the very harms on dealers and franchisees that the FTC Rule (*see* Compl. ¶¶ 101-118) was designed to prevent.  Defendants' argument boils down to the remarkable proposition that statutes aimed at precluding abuse of franchisees and dealers can safely be ignored by private

contracts that do not comply with those statute's requirements. *See, e.g., Capital Equipment, Inc. v. CNH America, LLC*, 471 *F. Supp. 2d* 951 (E.D. Ark. 2006) (franchisor could not contract out of statutory provision regarding franchisees' release of claims; *A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 618 *N.Y.S. 2d* 155 (Sup. Ct. 1994) (contract provisions cannot preclude application of antifraud provisions in N.Y. Franchise Sales Act); Fla. Stat. Sec. 501.502(2) (mandating liberal interpretation of FDUTPA to "protect the consuming public").[2]

## V.  PLAINTIFFS PROPERLY ALLEGE THEIR TORT CLAIM (COUNT IX, NEGLIGENT MISREPRESENTATION)[3]

Defendants' argument for dismissing Plaintiffs' negligent misrepresentation claim derives centrally from the premise that Florida law prohibits such a claim "because it is based solely on statements made outside of the Agreement." Def. Mot. at 11.  Defendants rely on the Agreement's § 8.1, a "zipper clause," which purports to exclude reliance on statements or undertakings outside of those the Agreement expressly contains. *See* Def. Mot. at 11.  Plaintiffs did not execute the Agreement.  The zipper clause is inapplicable and Plaintiffs' negligent misrepresentation claim survives.


## VI. ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE.

Any dismissal should be without prejudice. Barring patent futility or improper purpose for amending the Complaint, the dismissal of any claim should be without prejudice. *See, e.g., Denarii Systems, LLC v. Arab*, 2013 WL 500826, * 2  (S.D. Feb. 11, 2013) (citing Fed. R. Civ.

---

[2] To the extent necessary – and it is not, at least not on this record – Plaintiffs should be allowed to amend their complaint to allege Defendants' noncompliance even more specifically under New York law. *See, e.g., Friedlander v. Nims*, 755 *F.2d* 810, 813 (11th  Cir.1985) ("a district court should give a plaintiff an opportunity to amend his complaint rather than dismiss it when it appears that a more carefully drafted complaint might state a claim upon which relief could be granted.").  Assuming away Defendants' fundamental factual problem that Plaintiffs did not receive and execute the Agreement, if Plaintiffs had done so, they would still entitled to amend the complaint to add claims under New York's Franchise Sales Act, N.Y. Gen. Bus. Law § 687, and statutory prohibition on unfair trade practices. N.Y. Code. § 20-700, *et seq.*

[3] Given their voluntary dismissal of claims against AT&T Inc., Plaintiffs withdraw their tortious interference claims.

P. 15(a) requirement that leave to amend be freely given when justice so requires, and "[u]nless a motion to amend is made in bad faith, or for undue delay, constitutes dilatory conduct or will prejudice a non-movant, leave to amend should be freely given." (citing *Hargett v. Valley Fed. Sav. Bank*, 60 *F. 3d* 754, 761 (11th Cir. 1995)).

## CONCLUSION

Defendants' contract, implied contract and statutory claim dismissal arguments pivot almost entirely on the existence and validity of a purported contract that Defendants, despite superior knowledge of their own computer systems, data system architecture, records and agreements, fail to show Plaintiffs ever received, let alone understood, and, properly informed, voluntarily and knowingly entered. Defendants' tort claim dismissal arguments are similarly unfounded. Plaintiffs respectfully ask the Court to deny Defendants' Motion on all counts.

Dated: March 7, 2013

/s/ Stephen G. Grygiel
Stephen G. Grygiel
sgrygiel@keefebartels.com
John E. Keefe, Jr.
New Jersey Bar No. 034081990
jkeefe@keefebartels.com
For the Firm
170 Monmouth St.
Red Bank, NJ 07701
Telephone: (732) 224-9400

*Counsel for Plaintiffs*

/s/ Douglas P. Solomon
Douglas P. Solomon
Florida Bar No. 225800
DPSolomon@aol.com
200 S.W. 1st Avenue, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100

*Counsel for Plaintiffs*

EICHEN CRUTCHLOW ZASLOW &
McELROY

/s/ Barry R. Eichen
Barry R. Eichen
New Jersey Bar No. 015851986
beechen@njadvocates.com
Thomas Paciorkowski
New Jersey Bar No. 000822008
TPaciorkowski@njadvocates.com
For the Firm
40 Ethel Road
Edison, NJ 08817
Telephone:  (732) 777-0100

*Counsel for Plaintiffs*

DORF & NELSON, LLP

/s/ Jessica J. Kastner
Jessica J. Kastner
Dorf & Nelson, LLP
The International Corporate Center
555 Theodore Fremd Avenue
Rye, NY 10580
jkastner@dorfloaw.com
For the Firm
40 Ethel Road
Telephone:  (914) 381-7600

*Counsel for Moving Defendants*

## SERVICE LIST

| | |
|---|---|
| **Barry R. Eichen**<br>Eichen, Crutchlow, Zaslow & McElroy<br>40 Ethel Road<br>Edison, NJ 08817<br>732-777-0100<br>Email: beichen@njadvocates.com | **Audra A. Dial**<br>Kilpatrick, Townsend & Stockton, LLP<br>1100 Peachtree Street<br>Suite 2800<br>Atlanta, GA 30309-1528<br>404-815-6500<br>Email: adial@kilpatricktownsend.com |
| **Douglas Paul Solomon**<br>Douglas Paul Solomon Law Office<br>200 SW 1st Avenue<br>Suite 1200<br>Fort Lauderdale, FL 33301<br>954-525-4100<br>Fax: 954-525-4300<br>Email: dpsolomon@aol.com | **Jessica J. Kastner**<br>Dorf & Nelson, LLP<br>The International Corporate Center<br>555 Theodore Fremd Avenue<br>Rye, NY 10580<br>914-381-7600 |
| **John E. Keefe, Jr.**<br>Keefe Bartels<br>170 Monmouth St.<br>Red Bank, NJ 07701<br>732-224-9400<br>Email: jkeefe@keefebartels.com | |
| **Stephen G. Grygiel**<br>Keefe Bartels<br>170 Monmouth St.<br>Red Bank, NJ 07701<br>732-224-9400<br>Email: sgrygiel@keefebartels.com | |
| **Scott Allen Markowitz**<br>DeMahy, Labrador, Drake, Victory, Payne &<br>Cabeza<br>6400 North Andrews Avenue<br>Suite 500<br>Fort Lauderdale, FL 33309<br>954-229-9951<br>Fax: 954-229-9778<br>Email: smarkowitz@dldlawyers.com | |