## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62080-CIV-ROSENBAUM/SELTZER

SIG, INC., d/b/a VISONIC SYSTEMS, and
SECURE2WARE, INC.,

      Plaintiffs,

v.

AT&T DIGITAL LIFE, INC., f/k/a XANBOO, INC.,
AT&T TELEHOLDINGS, INC.,
ROBERT DIAMOND, WILLIAM DIAMOND, and
JAMES DIAMOND,

      Defendants.

_____/

### ORDER ON MOTIONS TO DISMISS

This matter is before the Court upon the Motion to Dismiss Plaintiffs' Complaint [D.E. 28] filed by AT&T Digital Life, Inc., and AT&T Teleholdings, Inc., (collectively "AT&T Defendants") and the Motion to Dismiss Plaintiffs' Complaint [D.E. 35] filed by Robert Diamond, William Diamond, and James Diamond (collectively "Diamond Defendants"). The Court has considered the motions, the parties' briefs, and the Complaint and is otherwise fully advised in this matter. For the reasons explained below, the Court grants in part and denies in part Defendants' dismissal motions.

### I. FACTUAL BACKGROUND

Plaintiffs allege the following facts, which are taken as true for the purpose of analyzing Defendants' motions to dismiss. Plaintiff SIG, Inc. ("SIG"), a Florida corporation with its principal place of business in Florida, does business under the name ViSonic Systems ("ViSonic"). D.E. 1, ¶ 3. Among other things, SIG "markets, distributes, supplies, and installs home and business electronic systems, including home security and home broadband services and products." *Id.*

Raymond Lovell is the owner of ViSonic.  *Id.*

Plaintiff Secure2Ware, Inc. ("Secure2Ware"), is a Florida corporation with its principal place of business in Florida.  *Id.* ¶ 4.  Secure2Ware "provides, among other things, alarm systems for commercial and residential buildings, video cameras, alarm monitoring and related goods and services."  *Id.*  Secure2Ware is owned by Keith Ware.  *Id.*

Xanboo, Inc. ("Xanboo"), was a New York corporation with its principal place of business in New York.  *Id.* ¶ 5.  Defendant Robert Diamond was a co-founder of Xanboo and served as its chief executive officer and chairman of its board of directors.  *Id.* ¶ 6.  Defendant William Diamond was a co-founder of Xanboo and served as Xanboo's president.  *Id.* ¶ 7.  Defendant James Diamond was likewise a co-founder of Xanboo.  *Id.* ¶ 8.  Defendant AT&T Teleholdings, Inc. ("AT&T Teleholdings"), a Delaware corporation with its principal place of business in Illinois, was an investor in Xanboo.  *Id.* ¶ 55.  Sometime between December 3, 2010, and November 2, 2011,[1] AT&T Teleholdings acquired Xanboo and purchased all of Xanboo's stock, thus making Xanboo a wholly owned subsidiary.  *Id.* ¶ 14.  Xanboo's name was subsequently changed to AT&T Digital Life, Inc.  *Id.* ¶ 5.

Xanboo's business involved providing a "technology platform that enables access and control of devices through TV, PC, Internet and mobile."  *Id.* ¶ 15.  To accomplish this, Xanboo sold both hardware and software designed to assist in the remote monitoring and remote control of business and residential environments.  *Id.*  Xanboo's product had "security, energy management, and

---

[1] Plaintiffs' Complaint contains apparently inconsistent allegations concerning the acquisition.  Plaintiff asserts both that AT&T Teleholdings "acquired Xanboo on or about December 3, 2010," *id.* ¶ 88, and that AT&T Teleholdings bought all Xanboo stock, making Xanboo a wholly owned subsidiary, on November 2, 2011, *id.* ¶ 14.

healthcare" applications and would, for example, permit a homeowner to remotely manage a home alarm system, adjust thermostats, or observe his or her children via a device connected to the Internet. *See id.* ¶¶ 15-16, 22. Originally, Xanboo attempted to sell its product through direct retail, but eventually, Xanboo decided to market its product to security-system vendors and installers to integrate with the security systems that the vendors and installers already offered. *Id.* ¶¶ 33, 35.

ViSonic learned about Xanboo by participating in a "Dealer Feasibility Study" organized by Group Gerhardt LLC ("Gerhardt"), an industry consulting firm. *Id.* In May 2010, ViSonic contacted Xanboo about becoming a Xanboo dealer. *Id.* ¶ 36. Xanboo responded by, on at least four occasions, sending ViSonic an email describing a "Xanboo Dealership Special Offer." *Id.* ¶ 37. The emails stated that ViSonic could become an authorized Xanboo Dealer by purchasing an "Enhanced Security Starter Kit WiFi Upgrade" for $299.00. *Id.*

ViSonic placed its opening order with Xanboo on August 13, 2010, and that same day received a "congratulations note" confirming ViSonic as an authorized Xanboo dealer. *Id.* ¶¶ 38, 39; *see also id.* ¶¶ 41-45 (describing communications addressed to ViSonic and Lovell as Xanboo dealers). The Complaint does not allege how ViSonic placed its initial order, whether by phone, email, website, fax, or other means. Nor does the Complaint set forth facts showing when or how Secure2Ware began its relationship with Xanboo or indicating that Secure2Ware or Ware ever received correspondence addressed to them as dealers.

Plaintiffs contend that Xanboo led them to believe "that Xanboo would continue its product and service offerings through the Plaintiffs' dealerships for at least long enough to permit Xanboo to 'expand the offering' with which it started." *Id.* ¶ 78. In November 2010, ViSonic received an email from Xanboo's "Regional Director of Dealer Development" Terry Gurley that stated that

Xanboo "plan[ned] to support the following devices in the beginning and then expand the offering from there." *Id.* ¶ 79. Xanboo's November 2010 correspondence also included a presentation forecasting future product offerings. *Id.* ¶¶ 80-83.

AT&T Teleholdings acquired Xanboo sometime after December 3, 2010. *Id.* ¶¶ 14, 88. Prior to the purchase, Xanboo did not disclose to Plaintiffs that it "was considering a possible sale of any or all of Xanboo," that it was "considering a potential sale of any Xanboo stock or assets to AT&T Teleholdings," or that "Xanboo was negotiating the sale of any Xanboo stock or assets to AT&T Teleholdings." *Id.* ¶¶ 84-86.

On December 7, 2010, Gerhardt sent an email to Plaintiffs on behalf of Gerhardt's principal, Rob Gerhardt. *Id.* ¶ 87. The email relates that Defendant William Diamond told Rob Gerhardt that "AT&T had bought his company after having invested in it in 2006." *Id.* In further describing William Diamond's interaction with Rob Gerhardt, the Gerhardt email notes that "[William Diamond] was excited and assured [Rob Gerhardt] that, from the small dealer perspective, it would only get better." *Id.* At a subsequent teleconference meeting, Rob Gerhardt reiterated to ViSonic that William Diamond had "assured Rob Gerhardt that the Xanboo platform would continue to improve and expand its offerings." *Id.* ¶ 90. The Complaint does not set forth facts indicating that William Diamond, or any of the Diamond Defendants, made any representation to Plaintiffs or had any other direct interaction with Plaintiffs.

After the acquisition of Xanboo, an attorney for AT&T sent a certified letter to Plaintiffs on March 3, 2011. The certified letter indicated that AT&T Teleholdings acquired Xanboo and specified that

> AT&T anticipates modifying or eliminating current Xanboo products and services and winding down its existing processes. The purpose of this letter is to notify you that your Agreement shall be terminated effective as of midnight, July 5, 2011.
>
> . . . [T]his letter serves as notice that you should not market or sell Xanboo service after July 5, 2011. Accordingly we encourage you to transition your service needs from Xanboo to another provider as soon as practicable.

*Id.* ¶ 91 (internal quotation marks omitted). Plaintiffs allege, however, that they "never even received any 'Agreement' to which the [attorney's] letter referred and purported without warning to terminate." *Id.* ¶ 93. Moreover, Plaintiffs aver that they "were aware of no warnings or communications from Xanboo that the work they were doing to promote, sell, and install Xanboo products in the days, weeks and months leading up to the dealer termination might be for naught." *Id.* ¶ 94. ViSonic's Lovell followed up with Xanboo's representative Terry Gurley in April 2011, and Gurley confirmed that AT&T Teleholdings was discontinuing its Xanboo dealer program. *Id.* ¶ 129.

Plaintiffs contend that, as dealers, they were Defendants' "franchisees" and, accordingly, that Defendants were required to comply with the Federal Trade Commission's franchise regulations. *Id.* ¶¶ 104, 105. Plaintiffs further claim, though, that Defendants, collectively, never provided required written disclosures to Plaintiffs on either a Federal Trade Commission "Disclosure Document" or a "Uniform Franchise Offering Circular." *Id.* ¶ 106, 116, 118.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed a ten-count[2] Complaint against Defendants[3] on October 22, 2012. *Id.*

---

[2] Plaintiffs' Complaint sets forth counts in Roman numerals from I through XII. However, the Complaint contains no "Count X," and Count XII consists of Plaintiffs' separately labeled Class Action allegations. *See* D.E. 1 at 40-41; *id.* ¶¶ 201-211; *see also* L.R. 23.1(b), S.D.

Plaintiffs' first five counts all concern the alleged contractual relationship between Plaintiffs and Defendants. Count I alleges that all Defendants breached the dealership contract between Plaintiffs and Xanboo by discontinuing the dealer program. *Id.* ¶¶ 119-131. Count II asserts that all Defendants breached the duty of good faith and fair dealing by negotiating and consummating AT&T Teleholdings's acquisition of Xanboo with the knowledge that AT&T Teleholdings intended to discontinue the dealership relationship with Plaintiffs. *Id.* ¶¶ 132-139. Count III contends that all Defendants breached an implied-in-fact contract that Xanboo would continue to support its dealer relationships for a "commercially reasonable period of time, and no less than the amount of time required for Plaintiffs to recoup their investments in their Xanboo dealerships." *Id.* ¶¶ 140-142. Count IV claims that all Defendants breached an implied-in-law contract and that they have been unjustly enriched by the breach of that contract. *Id.* ¶¶ 143-148. Finally, Count V asserts a claim of promissory estoppel against all Defendants, alleging that Plaintiffs relied on Xanboo's promises to supply goods, services, and support for the foreseeable future when they became and remained Xanboo dealers. *Id.* ¶¶ 149-155.

The next three counts in Plaintiffs' Complaint set forth statutory causes of action under Florida law. More specifically, Count VI asserts that all Defendants violated Florida's Franchise Act, Section 817.416, Fla. Stat. *Id.* ¶¶ 156-163. Count VII avers that all Defendants violated Florida's Sale of Business Opportunities Act, Sections 559.80-559.815, Fla. Stat., *id.* ¶¶ 164-173, and Count VIII claims that all Defendants violated the Florida Deceptive and Unfair Trade Practices

---

Fla. The deficiencies in Plaintiffs' class-action allegations are addressed below.

[3] Three Defendants included in the original Complaint have been dismissed from this lawsuit. *See* D.E. 36; D.E. 46.

Act, Sections 501.201-501.213, Fla. Stat., *id.* ¶¶ 174-185.

Count IX of Plaintiffs' Complaint asserts a common-law tort claim for negligent misrepresentation against all Defendants. *Id.* ¶¶ 185-192. Count XI alleges a common-law claim for tortious interference with a business relationship against AT&T Teleholdings and the Diamond Defendants. *Id.* ¶¶ 193-200. Apparently, though, Plaintiffs have since conceded that Count XI should be dismissed as to AT&T Teleholdings. *See* D.E. 37 at 18 n.3.

### III. LEGAL STANDARDS

#### A. Applicable Standard on a Motion to Dismiss Under Rule 12(b)(6), Fed. R. Civ. P.

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, a court must limit its consideration to the pleadings and exhibits attached to the pleadings and, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro*

*v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Upon engaging in this analysis, a court should deny a motion to dismiss where the pleading asserts non-conclusory, factual allegations, that, if true, would push the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570) (explaining that allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). A claim is facially plausible when the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Pleading Standards Under Rule 9(b), Fed. R. Civ. P.

Rule 9(b), Fed. R. Civ. P., provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purpose of this particularity requirement is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotation marks omitted). Rule 9's heightened pleading standard also applies to common-law negligent-misrepresentation claims. *See Arnold v. McFall*, 839 F. Supp. 2d 1281, 1288-89 (S.D. Fla. 2011). Rule 9(b) may be satisfied if a plaintiff sets forth

> (1) precisely what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time and
> place of each statement and the person responsible for making (or, in

8

> the case of omissions, not making) same, and (3) the content of such
> statements and the manner in which they misled the plaintiff, and (4)
> what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  These

factors are not exclusive, however, and a plaintiff may satisfy Rule 9(b)'s particularity requirements

through alternative means.  *Id.* (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1512 (11th

Cir. 1988).

It is true that Rule 9's particularity requirements must be read in conjunction with Rule 8 "so

as not to abrogate the concept of the notice pleading."  *Degirmenci v. Sapphire-Fort Lauderdale,*

*LLLP*, 693 F. Supp. 2d 1325, 1344 (S.D. Fla. 2010) (quoting *Durham*, 847 F.2d at 1511).

Nevertheless, because fair notice is the most basic consideration underlying Rule 9(b), a complaint

must reasonably notify defendants of their purported role in the scheme, and, in cases involving

multiple defendants, the complaint must inform each defendant of his or her alleged role in the fraud.

*Brooks*, 116 F.3d at 1381 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777-78

(7th Cir. 1994)).

## IV. DISCUSSION

### A.  The AT&T Defendants Cannot Rely on the Attached Declarations and Agreement

The AT&T Defendants seek dismissal of Plaintiffs' contract-related claims (Counts I-V) and

statutory claims (Counts VI-VIII) on the basis that the only contractual relationship between the

parties was governed by a "click through" agreement executed by Plaintiffs on Xanboo's website.

*See* D.E. 29 at 4; *see generally id.* at 5-10.  More specifically, the AT&T Defendants maintain that

the termination clause in the click-through agreement precludes the breach-of-contract claim, *id.* at

5-6, and that the termination and merger clauses in the agreement thwart Plaintiffs' quasi-contract

and equitable claims, *id.* at 7-9.  Furthermore, the AT&T Defendants argue that the agreement's choice-of-law provision specifying that "New York law governs the 'rights and obligations of the Parties under this Agreement'" requires dismissal of Plaintiffs' statutory claims brought under Florida law.  *See id.* at 9-10.

As evidence of the agreement and its relevance, the AT&T Defendants provide two declarations from Stuart Tomlinson, a former Xanboo and current AT&T Digital Life, Inc., employee.  *See* D.E. 29-1; D.E. 43.  Tomlinson's declarations include the language of the click-through agreement as well as screen-captures of the Xanboo website demonstrating how a user would "accept" the click-through agreement while accessing the site as a Xanboo dealer.  D.E. 29-1 at 3-7; D.E. 43 at 6-10, 12-18.  Tomlinson also asserts in the declarations that this agreement, which was first placed on Xanboo's website on October 25, 2010, "was the controlling agreement" between Plaintiffs and Xanboo.  D.E. 29-1, ¶ 3; D.E. 43, ¶¶ 3-4.

For their part, Plaintiffs did not include or even mention the click-through agreement in their Complaint.  *See* D.E. 1.  In fact, Plaintiffs expressly assert that they did not receive any agreement containing a termination clause.  *Id.* ¶ 93.

The AT&T Defendants retort that the agreement is "central" to Plaintiffs' claims, and, therefore, the Court is permitted to consider it in ruling on Defendants' Rule 12(b)(6) dismissal motion.  D.E. 29 at 3; *see also* D.E. 42 at 4 n.2.  For several reasons, the Court is unpersuaded by Defendants' argument that the click-through agreement can be considered at this stage.

As a general rule, a court is confined to the allegations within the complaint and any documents attached to the pleading when addressing a motion under Rule 12(b)(6).  *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  The AT&T Defendants are

10

correct, though, when they assert that a limited exception to this rule exists, permitting courts to consider, under certain circumstances, extraneous materials that a defendant attaches to its dismissal motion.  To fall within the exception, though, the document must have been referenced by the plaintiff in its complaint, it must be central to the plaintiff's claim, and its contents must not be in dispute.  *See id.*; *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Brooks*, 116 F.3d at 1369.  The click-through agreement fails to meet each of these requirements.

As noted above, Plaintiffs do not mention the click-through agreement in their Complaint, and, in fact, aver that they never received any formal agreement that includes the terms found in the attached agreement.  *See* D.E.1, ¶ 93.  Nor do Plaintiffs allege that they initially became Xanboo dealers by way of Xanboo's website.  Instead, the Complaint asserts only that Plaintiffs received Xanboo's offer by an email indicating that Plaintiffs could become Xanboo dealers by placing an order for a starter kit and that ViSonic placed such an order on August 13, 2010.  *Id.* ¶¶ 37-38.  But nothing on the face of the Complaint, either express or implied, suggests that the only means through which Plaintiffs could have become dealers was through the Xanboo website and, necessarily, the click-through agreement.  Thus, contrary to the AT&T Defendants' assertions, the allegations in the Complaint do not conclusively establish that Plaintiffs executed the click-through agreement.

Further counseling against consideration of the attached agreement is Defendants' own admission that the click-through agreement was not posted to the website until October 25, 2010.  D.E. 42 at 2; D.E. 43, ¶ 4.  Plaintiffs' Complaint explicitly alleges that ViSonic[4] placed an order with

---

[4] In a footnote in their reply brief, the AT&T Defendants point out that the Complaint is "virtually devoid of any specific allegations regarding Secure2Ware" and should be dismissed "[f]or this reason alone."  D.E. 42 at 3 n.1.  The Court will not consider this cursory assertion to which Plaintiffs have not been afforded an opportunity to respond.

Xanboo and became a dealer on August 13, 2010—more than two months before the click-through agreement existed. D.E. 1, ¶ 38. Thus, Plaintiffs' claims rest, at least in part, on the alleged existence of a contractual or quasi-contractual relationship that existed prior to the posting of the click-through agreement.[5]

Although the AT&T Defendants contend that both Plaintiffs subsequently placed orders through the website after October 25, 2010, thus binding them to the click-through agreement, D.E. 42 at 2-3, that argument is unavailing for two reasons. First, none of the Complaint allegations cited by Defendants actually mention use of a website; rather, they aver only that Plaintiffs placed orders for Xanboo equipment, not how Plaintiffs placed those orders. *See* D.E. 1, ¶¶ 43, 48, 50, 51, 130. Second, Defendants rely on the testimony of Tomlinson and not the Complaint (or the agreement itself) to establish that Plaintiffs placed post-October 25, 2010, orders on the website. D.E. 42 at 3-4 (citing D.E. 43, ¶¶ 18, 19). Whatever exceptions permit a court to consider central, undisputed *documents* attached to a Rule 12(b)(6) motion to dismiss, Defendants have pointed to no legal authority that would permit the Court to consider disputed sworn testimony from their employee at this stage without converting the motion to one for summary judgment. Therefore, the factual issues of whether Plaintiffs accepted the click-through agreement after October 25, 2010, and whether that

---

[5] Defendants further contend that the "fact that Plaintiffs' claims depend on the absence of a written agreement with Xanboo renders the [click-through] Agreement central to Plaintiffs' claims." D.E. 42 at 4 n.2. The Court disagrees. Nothing about Plaintiffs' claim that no written agreement exists necessarily means, or even suggests, that there must therefore have been a click-through agreement. Moreover, the authorities Defendants cite to argue otherwise are each distinguishable, as those cases either involved interpretation of contracts actually acknowledged in the complaints, *G&T TIC, LLC v. Ala. Controls, Inc.*, 324 F. App'x 795, 798-99 (11th Cir. 2009); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), or involved Rule 12(b)(3) improper-venue or arbitration-clause motions that implicate a different evidentiary framework than does a Rule 12(b)(6) motion, *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1259-61 (10th Cir. 2012).

acceptance modified or supplanted any existing contracts between the parties are questions to be resolved at a later stage in this litigation.

In short, the attached click-through agreement is not referenced in the Complaint, not central to Plaintiffs' claims, and not undisputed.  Accordingly, it cannot be considered at this stage of the proceedings.[6]  Because the AT&T Defendants' arguments for dismissal of all statutory claims and nearly all of the contract-related claims[7] depend solely on the click-through agreement, the AT&T Defendants' dismissal motion is denied with respect to these claims.

### B. Plaintiffs Unjust Enrichment Claim Against the AT&T Defendants Is Dismissed

In their only dismissal argument not tied to the click-through agreement, the AT&T Defendants assert that the unjust-enrichment claim in Count IV "must also fail because Plaintiffs have not alleged that AT&T was enriched at Plaintiffs' expense."  D.E. 29 at 8.  Plaintiffs respond that they have sufficiently set forth an unjust-enrichment claim by claiming  that Plaintiffs invested time, money and effort "in learning about, marketing, selling, installing, and servicing products and building a brand the AT&T Defendants later unilaterally arrogated to themselves without compensation to Plaintiffs."  D.E. 37 at 15-16; see D.E. 1, ¶ 146.[8]  The Court is persuaded by the AT&T Defendants and dismisses the unjust-enrichment count against them.

---

[6] This is not to say, of course, that the click-through agreement is invalid or is not ultimately controlling of the relationship between Plaintiffs and Defendants.  This determination, though, must be made on a more developed factual record at a later point in these proceedings.

[7] The AT&T Defendants also seek dismissal of the unjust-enrichment claim based on deficiencies in Plaintiffs' pleading.  This argument is addressed below.

[8] Plaintiffs' Complaint also alleges "Plaintiffs, by their payments to Xanboo for goods and services, conferred a benefit on Defendants."  D.E. 1, ¶ 145.  As Plaintiffs have not alleged that they did not receive the goods and services for which they paid, this allegation cannot support a claim for unjust enrichment.

To prevail on a claim for unjust enrichment under Florida law, a plaintiff must prove the following elements: "(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (citations omitted); *see also Tooltrend, Inc. v. CMT Utensil, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). A party may recover on an unjust-enrichment claim only when no valid express or implied-in-fact contract exists. *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) (citations omitted).

Here, although Plaintiffs dispute that the click-through agreement governs their relationship, taken as true, the allegations of Plaintiffs' Complaint establish on their face that Plaintiffs entered into an agreement to become Xanboo dealers. *See* D.E. 1, ¶¶ 37-39, 41.[9] The gist of Plaintiffs' claim is that Defendants ended this relationship prematurely, before Plaintiffs could recoup their investments. *Id.* ¶ 144. Thus, Plaintiffs are alleging the breach of an express or implied agreement. The benefits Plaintiffs allege that they conferred on Defendants—"marketing, selling, installing and servicing products and building a brand"—are all benefits consistent with those provided under any dealer or franchise agreement. *See Tooltrend*, 198 F.3d at 807-08 (holding that marketing and product-recognition benefits conferred by a distributor on a producer who ended the distribution relationship were incidental to the distributorship and not unjust). The incidental benefits provided

---

[9] Additionally, Plaintiffs' "unjust enrichment" count alleges facts consistent with an implied-in-fact contract but applies a conclusory "implied-in-law" label to those allegations. *See* D.E. 1, ¶ 144; *see also id.* ¶ 141 (applying the "implied-in-fact" label to the identical factual allegations in Plaintiffs' breach-of-implied-in-fact contract count).

14

by Plaintiffs as dealers under their agreement with Defendants therefore cannot support an unjust-enrichment claim as a matter of law.  Accordingly, Count IV must be dismissed as to the AT&T Defendants.

### C. Plaintiffs Contract and Quasi-Contract Claims Against the Diamond Defendants Are Dismissed

The Diamond Defendants assert, generally, that they cannot be held liable to Plaintiffs based solely upon their status as officers of the corporation.[10]  *See* D.E. 35 at 7-10.  With respect to the contract and quasi-contract claims in Counts I through V, the Diamond Defendants contend that Plaintiffs "only allege claims against the business entity, Xanboo, and not against any of the Diamonds, individually."  *Id.* at 8.  Plaintiffs counter that their claims are stated against all Defendants, that individual liability of corporate officers is a "factual issue," that the counts are sufficiently pled to entitle Plaintiffs to discovery, and that the Diamond Defendants are adequately on notice of the claims against them in their individual capacities.  D.E. 41 at 3-4, 6-7.  None Plaintiffs arguments are sufficient, however, to overcome the lack of plausible allegations that would impute liability for Xanboo's contracts to the individual Diamond Defendants.

It is well settled that a corporation's officer is not liable for a corporation's contracts unless he or she "signed in an individual capacity, or unless the corporate veil was pierced or the corporate entity should be ignored because it was found to be formed or used for fraudulent purposes, or where the corporation was merely the alter ego of the shareholder."  *White-Wilson Med. Ctr. v Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. 1st DCA 1986); *Ryan v. Wren*, 413 So. 2d 1223, 1224

---

[10] The Diamond Defendants appear to treat all of Plaintiffs' claims as tort claims.  *See* D.E. 35 at 7-8.  This section addresses only those claims based on the contractual or quasi-contractual relationship between Plaintiffs and Xanboo.  Plaintiffs' statutory claims and tort claims are considered below.

(Fla. 2d DCA 1982). Therefore, in the absence of any facts suggesting that any individual Diamond Defendant entered a contract in an individual capacity, that Xanboo's corporate form is illegitimate, that Xanboo is merely an alter ego of the Diamonds, or that the Xanboo corporate veil should be pierced for any reason with respect to Counts I through V, Plaintiffs cannot maintain their contract or quasi-contract claims against the Diamond Defendants.

In Count I, Plaintiffs allege a breach-of-contract action against all Defendants. *See* D.E. 1 at 25. However, the allegations in this count expressly allege that the contract was between Plaintiffs and Xanboo. *Id.* ¶ 121. At no place in Count I do Plaintiffs assert that the Diamonds also entered a contract with Plaintiffs or any other facts that suggest any plausible basis for holding the Diamonds individually responsible for Xanboo's corporate contracts. Plaintiffs point without explanation to their allegations that the relationship would be "continuing" and to a representation allegedly made by William Diamond to a third party concerning the expansion of the Xanboo platform as supporting their contract claims against the individual Diamond Defendants. *See* D.E. 41 at 6. But the Court cannot discern how these facts, taken as true, suggest that Plaintiffs and the Diamonds had an individual contract or that the Diamonds behaved in a way that justifies disregarding the corporate form. Accordingly, Count I must fail as to the Diamond Defendants.

In Count II Plaintiffs allege that all Defendants, including the Diamond Defendants, breached the duty of good faith and fair dealing. D.E. 1 at 28. While Plaintiffs are correct that Florida law recognizes that "every contract contains an implied covenant of good faith and fair dealing," *see Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005), the Diamond Defendants are correct in stating that the breach of this duty does not give rise to an independent cause of action, *id.* Still, a plaintiff may state a claim for the breach of this duty as part

16

of a breach-of-contract claim, but to do so, a plaintiff must also allege the breach of an express contractual obligation. *Id.* at 1151-52; *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315-18 (11th Cir. 1999). Therefore, to the extent that Plaintiffs assert Count II as a separate cause of action, Florida law precludes their claim. To the extent that Plaintiffs set forth Count II as a component of their breach-of-contract claim, the count must be dismissed because, as explained above, Plaintiffs have not stated a breach-of-contract claim against the individual Diamond Defendants.

Count III (breach of implied-in-fact contract), Count IV (unjust enrichment), and Count V (promissory estoppel) fail for the same reason as Count I—Plaintiffs have not alleged any factual basis for finding a contract between Plaintiffs and the Diamond Defendants, asserted any promise was made by the Diamonds independent of their role with Xanboo, or set forth any facts that would support holding the Diamonds—as opposed to Xanboo—liable for Xanboo's purported breach. *See* D.E. 1, ¶ 141 ("Xanboo formed and undertook a contract implied in fact . . . ."); *id.* ¶ 142 ("Xanboo breached its implied contract . . . ."); *id.* ¶ 144 ("Xanboo formed and undertook a contract implied in law . . . ."); *id.* ¶ 150 ("Xanboo made representations . . . .").[11]

Moreover, Plaintiffs' unjust-enrichment claim also fails for another reason with respect to the Diamond Defendants—Plaintiffs have not set forth what benefits Plaintiffs directly conferred on the Diamond Defendants. *See Aceto Corp. v. TherapeuticsMD, Inc.*, ___ F. Supp. 2d ___, 2013 WL

---

[11] Plaintiffs' promissory-estoppel count also sets forth five statements that Plaintiffs label "promises" that Plaintiffs claim to have relied on. D.E. 1, ¶ 151. But the statements in question are statements of fact, not promises. As a result, while, if untrue, these statements may support Plaintiffs' misrepresentation claims, they cannot provide the basis for a promissory-estoppel claim. *See White Holding Co. v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (promissory estoppel requires "a promise made by the promisor").

3761073, at *16 (S.D. Fla. July 17, 2013) (citations omitted) ("In Florida, the law of unjust enrichment requires a benefit to pass directly from the plaintiff to the defendant . . . ."). Here, the benefits Plaintiffs allegedly conferred—"marketing, selling, installing and servicing products and building a brand," *see* D.E. 1, ¶ 146; D.E. 37 at 15-16—were all bestowed on Xanboo, as they relate to the marketing, selling, installing, and servicing of Xanboo products and the building of Xanboo's brand. Based on the facts alleged in the Complaint, any benefits the Diamonds would have received would have been derived indirectly by virtue of their role in the corporation, not conferred directly on them by Plaintiffs.

Finally, Plaintiffs argue in multiple instances that they have pled sufficient allegations to entitle them to discovery on the elements of their asserted claims. *See, e.g.*, D.E. 41 at 3. But Plaintiffs put the proverbial cart before the horse. Before Plaintiffs can overcome a dismissal motion and be entitled to merits discovery, they must allege sufficient facts that, if taken as true, state a claim for relief. *See Iqbal*, 556 U.S. at 678-79. Plaintiffs cannot merely recite the elements of their causes of action and suggest that discovery will permit them to set forth the facts supporting those elements. *Id.* Nevertheless, because Plaintiffs have also stated that they can replead their Complaint to state a plausible claim for relief, the Court grants Plaintiffs leave to do so. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("Generally, 'where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint . . . .").

### D. Plaintiffs' Statutory Claims Against the Diamond Defendants Are Dismissed

#### 1. Florida Franchise Act Claims

Count VI of Plaintiffs' Complaint asserts a claim against all Defendants for violation of the Florida Franchise Act ("FFA"), Fla. Stat. § 817.416. D.E. 1, ¶¶ 156-163. Specifically, Plaintiff

alleges, generally, that "Defendants misrepresented to Plaintiffs, among other things, 'the prospects or chances of success of a proposed or existing franchise or distributorship'" in violation of Section 817.416(2)(a)(1).  *Id.* ¶ 161.  The Diamond Defendants move to dismiss this claim by arguing that Plaintiffs have failed to identify any intentional misrepresentations made by any of the individual Diamond Defendants.  D.E. 35 at 8.  The Court agrees that Plaintiffs' FFA claims are inadequately pled as to the individual Diamond Defendants.

To recover on a civil claim under the FFA, a plaintiff must establish that a franchisor made an intentional misrepresentation and that the franchisee relied on the misrepresentation to its detriment.  *See Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009); *Beaver v. Inkmart, LLC*, 2012 WL 3822264, at *6 (S.D. Fla. Sept. 4, 2012) (citing *Travelodge Int'l, Inc. v. Eastern Inns, Inc.*, 382 So. 2d 789, 791 (Fla. 1st DCA 1980)).  A franchisor's corporate officer may not be held individually liable under the FFA unless he or she "personally participated in the fraud."  *See Checkers Drive-In Rests., Inc. v. Tampa Checkmate Food Servs., Inc.*, 805 So. 2d 941, 943-44 (Fla. 2d DCA 2001); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1075 (Fla. 5th DCA 2008).

Here, Plaintiffs' Complaint is completely devoid of any facts with respect to James and Robert Diamond's personal participation in anything, let alone any intentional misrepresentation as to the continued success or existence of Xanboo dealerships.  Accordingly, Count VI is dismissed as to James and Robert Diamond.

Similarly, the text of Count VI references only "Defendants" generally as making misrepresentations, but does not point to the personal participation of William Diamond in any misrepresentation.  *See* D.E. 1, ¶ 161.  While Plaintiffs have incorporated by reference the factual

19

allegations from the beginning of the Complaint, *id.* ¶ 156, a review of those allegations mentioning William Diamond fails to reveal any intentional misrepresentation by William Diamond or any detrimental reliance by Plaintiffs based on William Diamond's representations.. *Id.* ¶¶ 40, 73, 77, 87, 90.

Paragraph 40 references an August 2010 interview given by William Diamond where he states that "Xanboo had signed up over 600 security dealers within the past 18 months." *Id.* ¶ 40. But Plaintiffs do not explain how this factual statement is untrue or misleading. Nor do Paragraphs 73 and 77 assert any representation on the part of William Diamond. *Id.* ¶¶ 73, 77. The closest Plaintiffs come are their allegations that William Diamond told Rob Gerhardt, following the sale of Xanboo to AT&T Teleholdings, that "from the small dealer perspective, it would only get better," and that "the Xanboo platform would continue to improve and expand its offerings." *Id.* ¶¶ 87, 90. However, Plaintiffs have not alleged that these statements are *intentional* misrepresentations (and, in fact, Plaintiffs' other causes of action suggest the representations were, at most, negligently made). Nevertheless, even if these statements are construed as intentional misrepresentations, Plaintiffs fail to set forth plausible factual allegations demonstrating how Plaintiffs—who were already Xanboo dealers at this point—detrimentally relied on these statements after Plaintiffs learned of them in December 2010. Accordingly, Count VI does not state a plausible claim with respect to any of the Diamond Defendants and is, therefore, dismissed with respect to them.

2.   Florida Sale of Business Opportunities Act

Plaintiffs' Complaint contends in Count VII that Defendants violated various provisions of Florida's Sale of Business Opportunities Act ("SBOA"), Section 559.80, *et seq.*, and that Plaintiffs were injured as a result. *See* D.E. 1, ¶¶ 164-173. As with Plaintiffs' FFA claim, Count VII is alleged

against "Defendants" generally, but incorporates the Complaint's initial factual allegations by reference. *Id.* The Diamond Defendants attack the SBOA claims on the same basis they challenged the FFA claims—that Plaintiffs have failed to allege a plausible basis for attributing liability to the Diamond Defendants individually.[12] *See* D.E. 35 at 8.

For the same reasons that the FFA claims cannot succeed, Plaintiffs' SBOA claims must fail. Although scant case law interpreting SBOA exists, the Court concludes that the general proposition found in Florida law that corporate officers are not liable for the acts of their corporation unless, at the very least, some personal involvement in the act is shown, applies with equal force to SBOA claims. *Cf. Batlemento v. Dove Fountain, Inc.*, 593 So. 2d 234, 239 & n.9 (Fla. 5th DCA 1991) ("The prohibitions of the act apply to the *seller* of the opportunity, not the shareholders of the seller or individuals who act for the seller." (emphasis in original)); *KC Leisure*, 972 So. 2d at 1072-75. As stated above, the Complaint contains no factual allegations regarding the personal participation of James or Robert Diamond in any action. Moreover, none of the purported SBOA violations, which focus on a failure to disclose termination terms or provide written documentation, are any more than tangentially related to William Diamond's alleged misrepresentations about the continued

---

[12] The Diamond Defendants also argue that Plaintiffs have failed to meet the jurisdictional threshold of $500 required to state an SBOA claim. D.E. 35 at 12-14. Defendants' arguments in this regard are misplaced. In their Complaint, Plaintiffs allege that they were required to pay a total of $538 to take advantage of Xanboo's "Premier Dealer" business opportunity. D.E. 1, ¶ 165; *see id.* ¶¶ 37, 41, 47. The Diamond Defendants contend, however, that Plaintiffs were not required to become "Premier Dealers" but, instead, could have become "Authorized Dealers" for only $299. D.E. 35 at 14. However, SBOA applies to the sale of *any* business opportunity that requires an initial payment of more than $500. Fla. Stat. § 559.801(1)(a). The facts alleged, taken as true, demonstrate that Xanboo's "Premier Dealer" business opportunity cost $538. D.E. 1, ¶ 165. Defendants cite no authority supporting the idea that the seller of a business opportunity can shield itself from the requirements of SBOA by offering a separate low-cost business opportunity in addition to a covered business opportunity actually purchased.

existence of the dealer program.  Accordingly, the SBOA claims are dismissed with respect to the Diamond Defendants.

### 3. Florida Deceptive and Unfair Trade Practices Act

Count VIII of Plaintiffs' Complaint alleges that all Defendants violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Sections 501.201 -501.213, Fla. Stat. D.E. 1, ¶¶ 174-185.  The FDUTPA claims are based on Defendants' alleged failure to adhere to the Federal Trade Commission's ("FTC's") franchise-disclosure requirements, their alleged misrepresentations about the duration of the dealerships, their alleged non-disclosure of the termination terms, and their alleged SBOA and FFA violations.  *Id.* ¶ 178.  In contrast to the other statutory counts, Plaintiffs assert that the individual Diamond Defendants are each liable under FDUTPA because they knew or should have known about Defendants' alleged FTC regulatory violations.  *Id.* ¶ 184.  The Diamond Defendants counter these claims by arguing that they are insufficiently pled under Rule 9(b), Fed. R. Civ. P., and that Plaintiffs make only conclusory claims about the individual Diamond Defendants' participation.  D.E. 35 at 8, 17-18.

At the outset, the Court disagrees that Plaintiffs' FDUTPA claims necessarily must be pled with particularity under Rule 9(b).  While Rule 9(b) does require particularity in pleading fraud, FDUTPA "sweeps far more broadly than the doctrine of fraud or negligent misrepresentation."  Fed. R. Civ. P. 9(b); *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010).  Accordingly, FDUTPA claims can be based on deceptive or unfair practices that do not involve fraud, such as the FTC regulatory violations alleged here, and need not be pled with particularity.  *See Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012).

22

With that said, however, "it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings." *KC Leisure*, 972 So. 2d at 1074; *see also Aboujaoude v. Poinciana Dev. Co. II*, 509 F. Supp. 2d 1266, 1276-77 (S.D. Fla. 2007) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 582 (Fla. 3d DCA 1984)).  To hold an individual liable for corporate violations of the FTC Act, "it is necessary to show that an individual defendant *actively participated* in or had some measure of control over the corporation's deceptive practices" **and** "that the defendant had or should have had knowledge or awareness of the misrepresentations." *KC Leisure*, 972 So. 2d at 1073-74 (emphasis added).  Thus, to satisfy Rule 8's pleading standards, Plaintiffs' FDUTPA allegations must "specify [Defendants'] individual actions and how they constitute a violation of FDUTPA." *Aboujaoude*, 509 F. Supp. 2d at 1277.

Here, Plaintiffs' FDUTPA claims are unsuccessful because they state only in a conclusory fashion that the individual Defendants "participated directly in the violations." D.E. 1, ¶ 184. Although Plaintiffs sufficiently aver that the individual Diamond Defendants knew or should have known of Xanboo's failure to make the required FTC disclosures, Plaintiffs have not alleged how each individual Diamond Defendant actively participated in or controlled the FTC violations.[13] Therefore, the FDUTPA claims are insufficient as a matter of law and are dismissed as to the Diamond Defendants.

---

[13] To the extent that Plaintiffs may also assert that William Diamond is individually liable under FDUTPA for the statements he allegedly made to Rob Gerhardt, that claim fails as well. Causation is an element of a FDUTPA claim, *see Wright v. Emory*, 41 So. 3d 290, 292 (Fla. 4th DCA 2010), but as discussed in the analysis of Count VI, Plaintiffs have not alleged how William Diamond's representations caused Plaintiffs any damage after Plaintiffs heard them in December 2010.

As with the contract claims, though, to the extent that Plaintiffs believe that they can amend their statutory claims to state sufficient factual matter to support a claim, they may do so.

### E. Negligent Misrepresentation Claims Are Dismissed as to All Defendants

Plaintiffs set forth a common-law negligent misrepresentation claims against all Defendants. D.E. 1, ¶¶ 186-192.  Although Plaintiffs assert generally that all Defendants made misrepresentations concerning "continued business, product and service offerings, and support," *see id.* ¶ 189, Plaintiffs point to only a single specific misrepresentation in Count IX: the statement that William Diamond allegedly made to Rob Gerhardt and conveyed in Gerhardt's email to Plaintiffs that "from the small dealer perspective, it would only get better."  *Id.* ¶ 87, 187.[14]

The AT&T Defendants seek dismissal of Count IX based on the merger clause found in the click-through agreement.  D.E. 29 at 11.  As noted above, however, the click-through agreement is unavailable to the AT&T Defendants at this stage.

The Diamond Defendants, on the other hand, challenge the negligent-misrepresentation claims on multiple grounds, including a failure to plead with particularity under Rule 9(b), Fed. R. Civ. P., a failure to identify a misrepresented fact, and a failure to allege an intent not to follow through with a future promise.  *See* D.E. 35 at 14-18.  In the interests of judicial economy, to the extent that the Diamond Defendants' arguments are applicable to the AT&T Defendants, the Court will analyze them here.

### 1. Pleading Standards for Negligent Misrepresentation in Florida

Florida law recognizes a tort claim for negligent misrepresentation.  *See Butler v. Yusem*, 44

---

[14] In Count IX, Plaintiffs quote this language, with modifications, slightly differently as "from the small dealer program [*sic*] [the Xanboo program] would only get better."  D.E. 1, ¶ 187.

So. 3d 102, 105 (Fla. 2010).  The elements of a negligent-misrepresentation claim include the following:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

*McGee v. JP Morgan Chase Bank, NA*, ___ F. App'x ___, 2013 WL 2321782, at *1 (11th Cir. May 29, 2013) (quoting *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).  Claims for negligent misrepresentation must be pled to meet the particularity standard required by Rule 9(b) for fraud claims because, in Florida, "negligent misrepresentation sounds in fraud."  *Id.*; *see Linville v. Ginn Real Estate Co.*, 697 F. Supp. 2d 1302, 1306 (M.D. Fla. 2010); *C.S.I.R. Enters., Inc. v. Sebrite Agency, Inc.*, 214 F. Supp. 2d 1276, 1281 (M.D. Fla. 2002).  Accordingly, Plaintiffs' allegations must satisfy Rule 9(b)'s specificity requirements by setting forth

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*McGee*, 2013 WL 2321782, at *1 (quoting *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011)).  Alternatively, the Complaint may use alternative means reasonably calculated to notify each Defendant with particularity of his or its alleged role in the fraud.  *See Brooks*, 116 F.3d at 1381.

At the outset, Plaintiffs contend that Rule 9(b) does not apply to their negligent-

misrepresentation claims under Florida law. *See* D.E. 41 at 15-16. However, Plaintiffs rely on cases from the Sixth Circuit construing Wisconsin law and the Seventh Circuit construing Illinois law to support their assertion that Rule 9(b) does not apply. As the Eleventh Circuit and Florida courts have stated, however, the cause of action for negligent misrepresentation in Florida sounds in fraud rather than negligence. *McGee*, 2013 WL 2321782, at *1; *Ostreyko v. B.C. Morton Org., Inc.*, 310 So. 2d 316, 318 (Fla. 3d DCA 1975); *see also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993) (Cox, J., concurring in the result in part and dissenting in part).

Moreover, the two cases from this District to which Plaintiffs point are distinguishable. In *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351 (S.D. Fla. 2009), the court held that a plaintiff stated a claim for negligent misrepresentation. *Id.* at 1355. However, neither the Court, nor, apparently, the parties raised Rule 9(b)'s pleading standards. Furthermore, the Court did not recount the facts of the complaint, and, thus, it is impossible to discern whether the facts pled would have satisfied Rule 9(b), anyway. In *Balaschak v. Royal Caribbean Cruises, Ltd.*, 2009 U.S. Dist. LEXIS 126949 (S.D. Fla. Sept. 14, 2009),[15] the court declined to apply Rule 9(b) because the defendant failed to "provide law that a negligent-misrepresentation claim under Florida law sounds in fraud." *Id.* at *23. As discussed above, though, numerous cases have held that a negligent-misrepresentation cause of action sounds in fraud in Florida. Accordingly, Plaintiffs must satisfy Rule 9(b)'s particularity requirements in pleading their negligent-misrepresentation count.

---

[15] Plaintiffs cite to *Balaschack v. Royal Caribbean Cruises, Ltd.*, 2010 U.S. Dist. LEXIS 9566, at *23 (S.D. Fla. Feb. 4, 2010). *See* D.E. 41 at 15. However, that order does not contain a page "*23" and makes no reference to Rule 9(b). It is clear that Plaintiffs meant to cite the September 2009 order found at 2009 U.S. Dist. LEXIS 126949.

## 2. Plaintiffs Fail to Satisfy Rule 9(b)

At the outset, Plaintiffs fail to plead their negligent-misrepresentation claim with the required particularity, and, therefore, Count IX must be dismissed with respect to all Defendants. As noted above, with exception of a statement made by Defendant William Diamond to a third-party, Plaintiffs do not allege in Count IX precisely what false statements were made by any particular Defendant at any particular time. Instead, Plaintiffs assert generally that Defendants made representations concerning "continued business, product and service offerings, and support" that were false because Defendants terminated the dealer network, and that Defendants knew or should have known that AT&T Teleholdings "might well discontinue the Xanboo dealership network" after purchasing Xanboo. D.E. 1, ¶¶ 188, 189. But Plaintiffs do not identify the time, place, or content of any false representations specifically and do not attribute them to the individuals who made them. Nor, given the lack of specificity, do Plaintiffs sufficiently link their reliance and damages to any particular falsehood. By not doing so, Plaintiffs' negligent-misrepresentation claim is facially doomed with respect the alleged misrepresentations regarding "continued business, product and service offerings, and support."

Similarly, Plaintiffs assert that Xanboo "touted itself as a solid business with 'mature product – 6th generation – 13 patents,' with 'over 50,000' home automation products shipped, and a large network of outlets through established security businesses." *Id.* ¶ 191. Beyond the fact that Plaintiffs do not set forth who made these statements and when and where they were made, Plaintiffs do not even allege how these statements are false. Plaintiffs merely make the conclusory assertion that these statements misrepresent Defendants' "commitment to the business." *Id.* Without so much as a cursory allegation that this information is, in fact, untrue, it cannot support a claim for negligent

27

misrepresentation.

Finally, with respect to the statement that William Diamond purportedly made to Rob Gerhardt "that, from the small dealer perspective, it would only get better," Plaintiffs fail to explain how they relied on this particular misrepresentation. *See id.* ¶¶ 87, 187, 192.  Although Plaintiffs allege who made the statement and when it was made (Gerhardt's December 7, 2010, email), the Complaint sets forth no specific allegations regarding what actions Plaintiffs did or did not take, or even what money was or was not spent by Plaintiffs after December 7, 2010, in reliance on William Diamond's representation.

Accordingly, Count IX fails to meet the particularity requirements of Rule 9(b) and therefore must be dismissed.  However, because a "more carefully drafted complaint may state a claim," *see Bryant*, 252 F.3d at 1163, the Court permits Plaintiffs an opportunity to amend this count, if they can do so, to satisfy Rule 9(b) and state a claim for negligent misrepresentation.

### F. Plaintiffs' Tortious-Interference Claims Are Dismissed as to All Defendants

In Count XI, Plaintiffs make a common-law claim against AT&T Teleholdings and the Diamond Defendants for tortious interference with Plaintiffs' business relationship with Xanboo. *See* D.E. 1, ¶¶ 193-200.  Specifically, the Complaint alleges that AT&T Teleholdings interfered with the relationship when it "bargained for and bought Xanboo."  *Id.* ¶ 198.  Similarly, the Complaint contends that the Diamond Defendants interfered when they "went ahead and sold Xanboo to AT&T Teleholdings." *Id.* ¶ 199.  The AT&T Defendants argue that the tortious-interference claim must be dismissed because the AT&T Defendants were not "strangers" to the business relationship with Xanboo.  D.E. 29 at 12.  Similarly, the Diamond Defendants urge that Count XI should be dismissed because Plaintiffs have failed to allege that "[t]he sale of the company, an action the Diamonds were

entitled to take, is . . . an active wrongdoing sufficient to hold them personally liable." D.E. 35 at 9.

In Plaintiffs' response to the AT&T Defendants, Plaintiffs appear to withdraw their tortious-interference claim. *See* D.E. 37 at 18 n.3.[16]  But Plaintiffs' response to the Diamond Defendants, filed eight days later, Plaintiffs contend that their tortious-interference claim is sufficiently pled to entitle them to discovery on the issue. *See* D.E. 41 at 5.  Accordingly, it seems that Plaintiffs have withdrawn their tortious-interference cause of action with respect to AT&T Teleholdings but seek to maintain the claim against the Diamond Defendants.  Nevertheless, the tortious-interference claim must be dismissed.

In order to maintain a claim for tortious interference with a business relationship under Florida law, plaintiffs must prove (1) the existence of a business relationship between the plaintiffs and a third party, (2) the defendants' knowledge of the business relationship, (3) the defendants' intentional and unjustified interference with the business relationship, and (4) damage to the plaintiffs as a result of the interference. *KMS Rest. Corp. v. Wendy's Int'l, Inc.*, 361 F.3d 1321, 1325 (11th Cir. 2004); *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).  A tortious-interference claim cannot succeed, though, "where the alleged interference is directed at a business relationship to which the defendant is a party." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007).  Similarly, an agent of a corporate party to the business relationship cannot be held liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation. *See Bray & Gillespie Mgmt., LLC v. Lexington*

---

[16] Plaintiffs state, "Given their voluntary dismissal against AT&T Inc., Plaintiffs withdraw their tortious interference claim."  D.E. 37 at 18 n.3.  Plaintiffs also offer no argument rebutting AT&T Teleholdings's motion to dismiss the tortious-interference count. *See* D.E. 37.

*Ins. Co.*, 527 F. Supp. 2d 1355, 1367-68 (M.D. Fla. 2007); *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992).  Thus, a corporate officer is not liable for tortious interference unless he acted outside the scope of his employment or against the best interests of his corporation.  *See Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1206-07 (S.D. Fla. 2005); *Sloan v. Sax*, 505 So. 2d 526, 528 (Fla. 3d DCA 1987).

Here, Plaintiffs allege only that the Diamond Defendants—corporate officers of Xanboo—interfered with the business relationship between Plaintiffs and Xanboo by selling Xanboo to AT&T Teleholdings.  D.E. 1, ¶ 199.  Plaintiffs set forth no allegations averring that the Diamond Defendants exceeded their authority as corporate officers or that orchestrating the sale of Xanboo to AT&T harmed the interests of Xanboo.  Without such allegations, Plaintiffs' tortious-interference claims fail on their face.  Accordingly, Count XI is dismissed.  Plaintiffs may amend this count if they can state non-conclusory allegations of fact demonstrating that the Diamond Defendants exceeded their authority or harmed Xanboo by negotiating the purchase of Xanboo by AT&T Teleholdings.

### G.  *Plaintiffs' Class-Action Allegations Must Be Repled*

Finally, the Diamond Defendants argue that the entire Complaint should be dismissed because Plaintiffs have failed to comply with this Court's Local Rules concerning the pleading of class actions.  D.E. 35 at 19-20; *see* L.R. 23.1, S.D. Fla. (requiring class actions to bear "Class Action" near the caption and to reference the provision of Rule 23, Fed. R. Civ. P., under which the class action is brought).  While Plaintiffs undisputedly have not complied with the Local Rule, *see* D.E. 1, ¶¶ 201-211, dismissal is not warranted.  Because Plaintiffs are granted leave to amend the substantive counts of their Complaint, Plaintiffs are hereby directed to replead their class-action

allegations to comply with the Local Rules.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** as follows:

1. AT&T Digital Life, Inc. and AT&T Teleholdings, Inc.'s Motion to Dismiss Plaintiffs' Complaint [D.E. 28] is **GRANTED IN PART and DENIED IN PART**. The motion is denied with respect to Counts I, II, III, V, VI, VII, and VIII. The motion is granted with respect to Counts IV, IX, and XI, which are **DISMISSED** as to the AT&T Defendants.

2. Robert Diamond, William Diamond, and James Diamond's Motion to Dismiss Plaintiffs' Complaint [D.E. 35] is **GRANTED**. All counts of the Complaint are dismissed with respect to the Diamond Defendants.

3. Plaintiffs are granted leave to amend their Complaint as set forth herein. Plaintiffs' amended pleading is due within <u>fourteen days</u> of the date of this Order.

**DONE and ORDERED** at Fort Lauderdale, Florida, this 12th day of September 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record

31